## PRUSSIA *v.* BAILEY.

1. TRIAL— CROSS-EXAMINATION — CORRESPONDENCE — PROOF — WITNESSES.

   A party to a cause, who offered a copy of a letter in which it was represented that some of defendants' notes were inclosed, might be cross-examined as to whether he actually did inclose them in the envelope.

2. SAME—PAYMENT—EXAMINATION.

   In support of a claim of payment, defendant's wife was properly allowed to testify where the money used in payment came from and to refresh her recollection by referring to a book of account.

3. EVIDENCE—HEARSAY—CORRESPONDENCE—LETTERS.

   The trial court was also justified in excluding an explanation given in one of the said letters why the plaintiff returned the papers, on the ground that it was self-serving.

4. SAME—DIRECTING VERDICT.

   Evidence, in an action on a certain note that defendant claimed had been paid, considered and *held*, to justify the court in submitting the issue of payment to the jury.

5. SAME.

   The claim of plaintiff being that the contract on which plaintiff's notes were based was invalid on the ground that it was entered into on Sunday, the court did not err in refusing to permit a witness to testify where plaintiff was on Monday morning, following the date in controversy.

6. AMENDMENT—TRIAL—PLEA AND NOTICE.

   When the amendment of a notice of payment was unnecessary the court did not commit reversible error in allowing defendant to correct it.

Error to Shiawassee; Miner, J. Submitted June 13, 1916. (Docket No. 56.) Decided September 26, 1916.

Assumpsit by Franklin O. Prussia against Orla Bailey and another on a promissory note. Judgment for defendants. Plaintiff brings error. Affirmed.

*A. L. Chandler* and *E. F. Wilson,* for appellant.

*Francis J. Shields* (*Leon F. Miner,* of counsel), for appellees.

STONE, C. J. This is an action of assumpsit, the declaration being upon the common counts, to which was attached under the usual notice a copy of a promissory note reading as follows:

"500.00          DETROIT, MICH., June 1, 1910.

"Seven months after date we promise to pay to Ruth E. Benjamin or order five hundred dollars at ———, value received, with 5 per cent. interest per annum from above date.

"ORLA BAILEY,
"ROBERT BAILEY."

Indorsed on back of note the following:

"Ruth E. Benjamin, May 5, 1911, received interest on this note to date.

"FRANKLIN O. PRUSSIA."

Under the plea of the general issue the defendants gave notice of payment of the note "set forth in plaintiff's declaration"; also the following:

"This notice is given for the purpose of pleading payment in full of all amounts claimed in the declaration to be due plaintiff from defendants, or either of them, all of which statements and averments in the notice contained defendants and each of them will prove as a part of their, and each of their, defenses at the trial of said cause."

It is undisputed that the note above set forth is one of a number of notes given in the purchase of a farm from Mrs. Benjamin, who was the mother of the plaintiff, and that on May 1, 1911, there remained unpaid and due two notes of $500 each, signed by both defendants, one note of $64 also signed by both defendants, and one note of $61 signed by defendant Orla Bailey alone, and that the plaintiff was the holder of

said notes, upon which notes there was interest due. It is also undisputed that defendant Orla Bailey had arranged to meet the plaintiff in Detroit, where the latter resided, on Sunday, May 7, 1911, for the purpose of paying some interest on said notes, and exchanging for the $500 note sued upon two notes, one for $200 and one for $300, payable eight months after date, with interest at 6 per cent. per annum.

The trial of the case took an unusual course for a simple suit upon a promissory note. Instead of introducing the note in evidence and resting, the plaintiff gave evidence tending to show that an agreement had been made with defendant Orla Bailey by which the plaintiff was to surrender the note sued upon for the two smaller notes, to wit, one for $200 signed by Orla Bailey, and one for $300, signed by both defendants; also that the two notes of $61 and $64, respectively, had been paid, and $100 paid and indorsed on the other $500 note, and all interest settled, leaving $900 unpaid upon the farm deal, but that such agreement had been made on Sunday, May 7, 1911, and was therefore void, and that he had returned the $200 and $300 notes to defendant Orla Bailey, and that he was entitled to recover upon the note sued upon.

Upon the cross-examination of the plaintiff the following receipt given by him to said defendant Orla Bailey was received in evidence without objection, viz.:

"DETROIT, MICH., May 8, 1911.

"Received of O. A. Bailey one eight months' promissory note dated May 5, 1911, and due January 5, 1912, for three hundred dollars no hundredths (in figures and dollar sign) interest, six per cent. from May 5, 1911, one signed by O. A. Bailey and Robert Bailey jointly. Received one note dated May 8, 1911, for two hundred dollars ($200) no one-hundredths, due January 8, 1912, interest six per cent. from May 8, 1911, and signed by O. A. Bailey. These notes given to take up a certain five hundred dollar no one-hundredths dollars note that I have of Robert Bailey and

O. A. Bailey made June 1, 1910. Received this date one hundred eighty-eight thirty-two one-hundredths dollars to apply on account of O. A. Bailey and Robert Bailey, but not to apply on the above specified notes.
                    "FRANKLIN O. PRUSSIA."

It was the claim of the plaintiff that the reason the two small notes and the $500 note sued upon were not surrendered to Orla Bailey at the time was that they were in the bank at Detroit. It was the further claim of the plaintiff that on May 26, 1911, he returned the $200 and $300 notes to the defendant Orla Bailey in a registered letter, a carbon copy of which was offered in evidence, the said defendant not being able to produce the original, and in fact claiming that he had not received such a letter. The carbon copy of the letter was finally received in evidence, except that part which was embraced in the parentheses, which was excluded because self-serving and immaterial, the plaintiff excepting to such ruling. The entire of said letter was as follows:

                                "May 26, 1911.
"MR. ORLA BAILEY,
    "Byron, Mich.
"*Dear Sir:*
    "I presume that you think I have forgotten all about you, or the forwarding of the notes, but I assure you that such is not the case. As I told you the night that you were here, that the notes were locked up in a vault down town and since that time it has been impossible for me to get down town during banking hours, so that I could get same from the vault. I am inclosing herewith the two small notes, that is, the joint note of you and your father for sixty-four dollars which was due February 1st; also the note for sixty-one dollars given by you which was due February 1st. Then you will find the two hundred and three hundred dollar notes that you gave me the night that you were here. (The reason that I am returning the last two notes to you is this: I have been thinking over the matter, and I could not quite understand why I should take

your note for $200.00 without any security, when your father objected to signing same. Now, don't misunderstand me, because I believe you are strictly honest and upright, but I am in a rather peculiar position. My means are limited. The property that you bought was bought jointly and if anything should happen to you I might have a pretty hard time to collect the $200.00 note. I can't understand why your father would object to making new notes at this time to cover less amount than he first signed for. Furthermore, personal notes without an indorser are very hard to convert into money, if I should ever be pressed for same. You know a good many people who are well to do that live near where you do that undoubtedly would be glad to sign the $200.00 note providing your father would not, or possibly they would be willing to loan you the money. You and Mr. Luther C. Kanouse are very good friends, and I would be willing to accept Mr. Kanouse as an indorser on your note.)

"I hope that my decision in this matter will not cause you any annoyance, as I have not intended to do so, but I believe that you will see the position that I am placed in regarding this matter. You can tell your father that I have credited one of the notes with one hundred dollars payment on the same, and also credited both of them with the interest up to the date you were here. That leaves a balance of nine hundred dollars due me, besides what interest that may accrue from the time you were here until they are paid. You said that you expected within thirty days from the time I saw you to pay some more on these notes, and I trust that you will be able to do so, as I wish to get this matter cleared up as fast as possible. In fact, when you gave me these notes, if you remember, you expected to have them all taken up by February 1st last, and I had planned upon this money to use, so that I have been inconvenienced quite a little by not getting same, as money cannot be borrowed as readily here as in a small place or in the country. Please let me hear from you at your earliest convenience, and make another payment as soon as possible. With kindest personal regards, I beg to remain,

"Yours truly,<br>"FRANKLIN O. PRUSSIA.

193 Mich.—6.

"(P. S.—I also inclose 9.68 refund as per agreement on check.)"

The plaintiff not only testified that no part of the $500 note sued upon had ever been paid, but he also testified as follows in answer to the following question by his counsel:

"Q. After you returned these notes to Mr. Bailey in the letter which you have spoken of, and those that were shown you, has he ever returned those notes to you, or any payment on them, in any way?
"A. No, sir."

On the part of the defendants it was claimed, and they gave evidence tending to support the claim, that the meeting between plaintiff and Orla Bailey in Detroit occurred after midnight Sunday night, that plaintiff was in Ann Arbor, and absent from Detroit until nearly midnight, and that the business between them was all transacted after midnight and on the 8th day of May, and that the receipt was properly dated on May 8, 1911, or on Monday, and that there was no truth in the claim that it was a Sunday contract. Defendants also denied that the $200 and $300 notes were returned to defendant Orla Bailey in the claimed letter of May 26, 1911, but claimed that the carbon copy was a subterfuge, in so far as the notes were concerned.

Both of the defendants, and the wife of defendant Orla Bailey, testified positively and circumstantially to the payment to the plaintiff of the $200 and $300 notes, with interest, amounting in all to $523, in the spring of 1912 at the house of defendant Orla Bailey, and that the plaintiff at the time produced and surrendered said notes; that defendant Robert Bailey objected to payment being made until the $500 note here sued upon was surrendered, but that plaintiff said it was covered by the said receipt. There were therefore two sharply contested questions of fact presented to the jury, viz.: Did the exchange of notes at Detroit

occur on Sunday, and were the $200 and $300 notes paid? These questions were fully and properly presented to the jury in a clear charge, in which we find no error.

The trial resulted in a verdict and judgment for the defendants, and the plaintiff, without moving for a new trial, has brought the case here upon writ of error. By 50 assignments of error the plaintiff complains of divers rulings of the court in the reception of evidence and in the charge. We have examined all of the assignments of error, but find it necessary to specifically refer to the following only:

The first assignment of error relates to the cross-examination of the plaintiff as to whether or not he inclosed the $200 and $300 notes in the envelope, and the following occurred:

"*Q.* Did you inclose anything else in that letter?
"*A.* I don't remember.
"*Q.* I am asking you for your recollection. Do you know whether you did or not?
"*A.* I told you I think so, but—
"*Mr. Chandler:* I think the letter would be the best evidence.
"*The Court:* He is not asking for the contents of the letter. He is asking what he did.
"*Mr. Chandler:* Then I will make the objection he is entitled to see the letter before he is cross-examined upon it.
"*The Court:* He may answer.
"Exception."

We think the defendants were entitled, under the circumstances, to inquire of the plaintiff what he did at the time of mailing the letter, and that it was not necessary before doing so to show plaintiff the letter. The important question was whether the notes were actually inclosed in that letter, as claimed by the plaintiff.

The wife of defendant Orla Bailey was permitted to

.testify where the money came from that was used to
pay the two notes in the spring of 1912, and was per-
mitted to refresh her recollection by reference to an
account book. The book was not put in evidence. The
issue was a sharp one, and we think that the evidence
was admissible as bearing upon the probabilities. See
cases cited in *Neal* v. *Neal*, 181 Mich. 114-128 (147
N. W. 624).

Error is assigned upon the refusal of the court to
receive in evidence the entire letter of plaintiff of May
26, 1911, above set forth. The vital part of the letter,
to wit, that he inclosed the $200 and $300 notes, was
received in evidence. The self-serving statements why
he returned the notes were excluded, and we do not
think that the ruling constituted reversible error. It
is significant that the reason there stated was not the
reason he gave at the trial.

Error is assigned because of the following ruling
in the direct examination of the witness Lamont as to
where the plaintiff was on May 8, 1911:

"*Q.* Do you know where Mr. Franklin O. Prussia
was on the 8th day of May, 1911?
"*Mr. Shields:* I object to it as incompetent, imma-
terial, and irrelevant.
"*The Court:* Objection sustained.
"Exception.
"*Mr. Chandler:* If your honor please, that is when
this paper is claimed to have been dated.
"*The Court:* Anything that occurred, if he knows
anything about who was with him at the time these
papers were executed, he may answer. You are cover-
ing a whole day. Confine it to the time they were
making that contract and bargain, if this witness
knows anything about it."

The plaintiff had already testified that the transac-
tion occurred on Sunday night, May 7th, just before
midnight. That was the occasion that was important.
Manifestly where the plaintiff was during the day of

Monday, May 8th, was not material. This witness was permitted to testify that Mr. Bailey was not at the factory where plaintiff was employed on May 8th, and that he did not know what time plaintiff reached the factory on that day; that he usually got there by 9 o'clock.

The court permitted the defendants to amend their notice under the general issue by claiming payment of the $200 and $300 notes.

The plaintiff having testified that those notes had never been paid, in whole or part, we think that an amendment of the notice was not necessary, but no error was committed in permitting the amendment. A careful reading of the entire record satisfies us that the important and controlling questions involved were questions of fact, which were properly submitted to the jury, which found that the note sued upon had been paid and satisfied, and that there is no reversible error in the record.

The judgment below is therefore affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.